UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-01384-SRC |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

Sandra O'Brien seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying her protective application for disability insurance benefits under Title II of the Social Security Act. The Court affirms the Commissioner's decision.

## I.    Procedural history

In January 2021, O'Brien applied for disability insurance benefits, alleging disability beginning January 1, 2021. Tr. 141. The Social Security Administration denied her claim initially and upon reconsideration. *Id.* Then, after a hearing in November 2021, the ALJ denied O'Brien's claim on July 6, 2022. Tr. 138, 141. O'Brien appealed this decision to the Appeals Council. Tr. 172. The Appeals Council vacated the ALJ's decision and remanded, asking the ALJ to gather and examine a host of evidence in determining O'Brien's claim, including the impact of O'Brien's migraines on her ability to work. Tr. 172–73. Following additional proceedings, including a hearing, Tr. 75–99, the ALJ denied O'Brien's claim again on November 16, 2023, Tr. 7. The Appeals Council denied review, Tr. 1, and the ALJ's decision accordingly

became the final decision of the Commissioner that this Court reviews, *see* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**II.      Standard for determining disability under the Act**

Under the Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability.  20 C.F.R. § 404.1520(a)(1).  First, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] . . . [that] significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J., concurring); and then citing 20 C.F.R. § 404.1521(a)).

2

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations."  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)).  While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."

3

20 C.F.R. § 404.1545(a)(3).  If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

**III.    The ALJ's decision**

Applying the foregoing, the ALJ concluded that O'Brien "has not been under a disability . . . from January 1, 2021, through the date of [the ALJ's] decision."  Tr. 29.  After determining that O'Brien "has not engaged in substantial gainful activity since January 1, 2021," the ALJ found that O'Brien had the following severe impairments:  fibromyalgia; degenerative disc disease; plantar fasciitis; migraines; patellofemoral chondromalacia; degenerative joint disease of the hips and shoulder; sensorineural hearing loss; mood disorder; and anxiety disorder.  Tr. 13. The ALJ then determined that none of these impairments individually, or in combination, met or medically equaled the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. *Id.*

After considering all of the evidence in the record, the ALJ concluded:

4

> [O'Brien] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ropes, ladders, or scaffolds.  She can occasionally climb ramps and stairs.  She can occasionally balance (as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO).  She can occasionally stoop, kneel, crouch, and crawl.  She can only occasionally reach overhead.  She can have no exposure to unprotected heights or hazardous machinery.  She is able to learn, remember, and carry out simple, routine tasks.  She is able to use reason and judgment to make simple, routine work-related decisions.  She is able to work at an appropriate and consistent pace while performing simple, routine tasks.  She is able to complete simple, routine tasks in a timely manner.  She is able to ignore or avoid distractions while performing simple, routine tasks.  She must have only gradual changes in the job setting and duties.  She is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks.  She is able to work a full day without requiring more than the allotted number or length of rest periods during the day while performing simple, routine tasks.  In addition, she can have no contact with the general public, but she is able to occasionally work close to or with co-workers and supervisors without interrupting or distracting them while performing simple, routine tasks.

Tr. 15–16.  The ALJ then determined that O'Brien "is unable to perform any [of her] past relevant work"; however, "[c]onsidering the [O'Brien's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [she] can perform."  Tr. 27–28.  Accordingly, the ALJ concluded that O'Brien is not disabled.  Tr. 29.

## IV.    Standard of review

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports her decision. 42 U.S.C. §§ 1383(c)(3), 1405(g).  If it does, the Court must affirm the decision.  *Id.*  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)).  The Court "do[es] not reweigh the evidence

5

presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)).  The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

## V.      Discussion

O'Brien makes two arguments for remand.  First, "[t]he ALJ failed to develop the record fully and fairly."  Doc. 14 at 3 (The Court cites to page numbers as assigned by CM/ECF.). Second, "[t]he ALJ failed to properly evaluate the effect of chronic migraine on RFC, in violation of the Appeals Council's remand order."  *Id.*

### A.      The ALJ's development of the record

O'Brien mainly contends that "the ALJ did not obtain medical evidence that addresses O'Brien's physical and mental abilities to function in the workplace and that supports the ALJ's RFC assessment during the entire alleged period of disability."  *Id.*  Regarding O'Brien's physical limitations, she argues that "the closest the record comes to supporting the RFC assessment . . . are the opinions of medical consultants, which predate all of the treatment records concerning O'Brien's knee condition, hip condition[,] and cervical spine condition."  *Id.* at 4. O'Brien "contends that the evidence as a whole supports a finding that she is limited to no more than sedentary work due to degenerative disk disease in the cervical and lumbar spine, osteoarthritis in the knees and hips."  *Id.* at 5.  She then lists assessments from various medical professionals, *id.* at 5–9, and asserts that Defendants' "medical consultants did not have the

6

opportunity to review any of the above evidence," *id.* at 9.  This leaves the Court "unable to determine whether the ALJ's decision is supported by substantial evidence," O'Brien claims.  *Id.* at 9–10.  She argues that "the ALJ should have obtained evidence from a medical expert . . . translating the new objective evidence showing moderate and bone-on-bone osteoarthritis in the bilateral knees, osteoarthritis in the hips and progression of O'Brien's cervical and lumbar spine degeneration into functional limitations." *Id.* at 12.  She claims that "[w]ithout input from a medical expert, the ALJ's conclusion is not supported by the record." *Id.* at 10.

O'Brien is incorrect that "the closest the record comes to supporting the RFC assessment . . . are the opinions of medical consultants." *Id.* at 4 (cleaned up).  Substantial evidence supports the ALJ's RFC assessment of O'Brien's physical capacity, including the following.  In March and September 2021, O'Brien "was spending her days performing housework, washing laundry, watching television, playing games [o]n her phone, . . . [and] caring for pets, including cleaning litter boxes, and giving them food and water." Tr. 19.  The ALJ found that "[t]his level of independent function is inconsistent with a finding of disability." *Id.*

In December 2021 and January 2022, O'Brien was taking part in modified kickboxing classes.  Tr. 20–21.  The ALJ found that "[e]ven with low-impact modification, the fact that [O'Brien] was involved in kickboxing is not indicative of an inability to perform a restricted range of light-duty work activity from a physical standpoint." Tr. 21.  O'Brien demonstrated muscle strength in her upper extremities in April 2022.  Tr. 23.  In November 2022, O'Brien's treatment notes indicated that she had "very vague symptoms," and "[h]er pain resolves" when she is "distract[ed] . . . [or] discuss[es] other objects." Tr. 24.  The examiner additionally concluded that it was "unlikely" that O'Brien had a "primary hip issue." *Id.*

Additionally, "[p]hysical therapy records for her right shoulder from April through December 2022 show improved functionality." *Id.*  In March to June 2023, O'Brien had strength and normal range of motion in her spine and ankle.  Tr. 24–25.  O'Brien also reported going to the gym and going dancing in June 2023, along with the ability to clean and take care of her mother.  Tr. 25.  In July 2023, O'Brien reported going to the pool with her friends and working a part-time job that the ALJ stated "appears to be beyond [O'Brien's RFC]."  Tr. 25–26.  Based on this, the Court finds that the ALJ's RFC assessment relies on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

Regarding O'Brien's mental limitations, she argues that "[t]he record does not contain any medical evidence that translates the evidence of mental impairments and subjective complaints into functional limitations."  Doc. 14 at 10.  She claims that "there is no medical evidence that addresses O'Brien's mental ability to function in the workplace and that supports the ALJ's RFC assessment that O'Brien can:  use reason and judgment to perform simple, routine tasks in a timely manner; work at an appropriate and consistent pace; ignore or avoid distractions; sustain regular attendance; and occasionally work close to or with co-workers and supervisors without interrupting or distracting them." *Id.*  O'Brien then lists various evidence in the record supporting her conclusion that she suffers great mental limitations, and argues that the ALJ should have "obtain[ed] a medical opinion to translate the evidence and allegations into an RFC assessment." *Id.* at 10–11.

Substantial evidence supports the ALJ's RFC assessment of O'Brien's mental capacity. The ALJ found that "[i]n her March and September 2021 Function Reports, [O'Brien] stated that she could pay bills, count change, and balance a checkbook."  Tr. 14.  O'Brien "was able to

8

understand and answer all questions asked during the hearing with no signs of significant cognitive deficit." *Id.* "She denied any difficulty getting along with others, including authority figures . . . . She further stated that she has never been fired from a job for an inability to interact with others effectively and that she was having lunch with others monthly." *Id.* The ALJ also notes that O'Brien's treatment notes from January 2022, and March 2022, showed an unremarkable mental status. Tr. 21–22. In February 2023, O'Brien "stopped all her psychiatric medication and felt she was doing well." Tr. 24. In July 2023, O'Brien's "mental status examination was largely within normal limits" and "[s]he reported her mood at 8/10." Tr. 25. Based on this, the Court finds that the ALJ's RFC assessment relies on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

Additionally, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (citing *Hensley*, 829 F.3d at 932). So the ALJ was not required to find persuasive the physical and mental assessments on which O'Brien bases her argument. Doc. 14 at 5–11. Nor was the ALJ required to obtain new medical opinions. *Id.* The Court declines O'Brien's invitation to "reweigh the evidence presented to the ALJ." *Reece*, 834 F.3d at 908 (quoting *Johnson*, 788 F.3d at 872). And it does not matter whether "substantial evidence also exists in the record that would have supported [O'Brien's desired] outcome," or whether a reviewing court "would have decided the case differently.'" *Stoner*, 818 F.3d at 369 (quoting *Andrews*, 791 F.3d at 928). The result remains the same.

9

**B.      The ALJ's consideration of the effect of O'Brien's migraines on her RFC**

O'Brien first notes that the ALJ, at Step Three of the sequential evaluation, found that O'Brien's headaches are not directly addressed by a listing in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.  Doc. 14 at 13; *see* Tr. 13–14.  If they were, the ALJ would have found O'Brien disabled, regardless of her age, education, and work experience.  *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d).

And while the ALJ found that the most comparable listing to O'Brien's headaches is epilepsy, the ALJ concluded that "documented frequency and severity of the claimant's headaches does not rise to the level described in this listing."  Doc. 14 at 13 (citing Tr. 14).  O'Brien asserts in a conclusory manner that "[t]he ALJ provided no analysis to support this finding."  Doc. 14 at 13.  But she does not argue that the ALJ's analysis of O'Brien's migraines is insufficient to support the finding, or that the ALJ *should* have found that O'Brien suffers from epilepsy and erred in not doing so.  *Id.*  Even taking O'Brien's claim at face value, she does not argue that she suffered prejudice from the ALJ's supposed lack of analysis.  *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

O'Brien next argues that "even if the headache does not equal a listing . . . [t]he ALJ failed to include any limitations from [O'Brien's] migraine[s] . . . in the RFC assessment."  Doc. 14 at 13.  O'Brien alleges that this "violates the Appeals Council's remand order and . . . the analysis set forth in" Social Security Ruling (SSR) 19-4p.  *Id.*  The Appeals Council's remand order asked the ALJ to examine O'Brien's migraine impairment, considering SSR 19-4p, including any "limitations in functioning that may be associated with the primary headache disorder or effects of its treatment."  Tr. 172–74.  SSR 19-4p states that an ALJ should "consider and discuss the limiting effects of all impairments and any related symptoms when assessing a

10

person's RFC."  SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).  When evaluating the "limiting effects," an ALJ must examine "the extent to which the person's impairment-related symptoms are consistent with the evidence in the record."  *Id.* at *8.

O'Brien contends that because "the ALJ failed to properly evaluate the effect of migraine headaches on RFC, the administrative decision is not supported by substantial evidence."  Doc. 14 at 16.  She also discusses evidence in the record detailing her issues with migraines to support her point that the severity of these migraines warranted additional limitations in the RFC assessment.  *See id.* at 14–15.

The ALJ evaluated the evidence of O'Brien's migraines, but ultimately gave them nominal weight.  The ALJ determined that in April 2021, a neurologist determined that O'Brien's "workups had been negative" and she was "neurologically intact, with a normal mental status and gait."  Tr. 19.  As of October 2021, O'Brien "reported significant improvement in her migraine[s]," and "despite her ongoing complaints, [she] was neurologically intact."  Tr. 20.  In December 2021, O'Brien "denied a history of frequent headaches."  *Id.*  And while her migraines flared up in April 2022, her "workups had been negative for any significant neurological disease."  Tr. 23.  In July 2022, O'Brien reported some improvements in her headaches.  Tr. 23.  In October 2022 and May 2023, O'Brien's medications were adjusted to address her headaches.  Tr. 24–25.  Based on this evidence, the ALJ concluded that "the objective findings do not support the severity of [O'Brien's] complaints."  Tr. 26.  And "[t]he limitations detailed in the [RFC assessment] are sufficient to account for [O'Brien's] verifiable symptoms."  Tr. 27.

Additionally, the ALJ's RFC assessment included various limitations:  she limited O'Brien's RFC to "light work" in performance of "simple, routine tasks," with "no contact with

11

the general public," among other things.  Tr. 15–16.  And the ALJ made this assessment in tandem with an analysis of O'Brien's migraines.  *See* Tr. 19–27.  The Court finds that this assessment relies on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek*, 587 U.S. at 103 (quoting *Consolidated Edison Co.*, 305 U.S. at 229).  The Appeals Council did not review the ALJ's decision.  Tr. 1.

O'Brien erroneously assumes that the ALJ had to include additional limitations in the RFC assessment based on O'Brien's migraines, and erred in not doing so.  *See* doc. 14 at 13.  Based on the ALJ's analysis, the Court finds that substantial evidence supports the ALJ's RFC assessment.  That the ALJ concluded that "the objective findings do not support the severity of [O'Brien's] complaints," Tr. 26, is not grounds for relief.  The Court—once again—will not "reweigh the evidence presented to the ALJ."  *Reece*, 834 F.3d at 908 (quoting *Johnson*, 788 F.3d at 872) (citation modified).  And it does not matter whether "substantial evidence also exists in the record that would have supported [O'Brien's desired] outcome," or whether a reviewing court "would have decided the case differently.'"  *Stoner*, 818 F.3d at 369 (quoting *Andrews*, 791 F.3d at 928).  Further, because "RFC is defined as the *most* a claimant can still do *despite* his or her physical or mental limitations," *Martise*, 641 F.3d at 923 (emphases added) (citation omitted), nothing mandated that the ALJ specifically include further limitations from O'Brien's migraines in the RFC, *see, e.g.*, 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations.").

The Court also finds unpersuasive two additional arguments O'Brien makes regarding her migraines.  She first argues that "the ALJ failed to recognize that, according to SSR 19-4p, doctors must rule out other causes of headaches before diagnosing headaches."  Doc. 14 at 13–14.  O'Brien appears to suggest that the ALJ's disagreement with the severity of O'Brien's

12

migraines is misplaced if doctors only diagnosed O'Brien's migraines after excluding other causes of headaches.  But this argument would require the Court to impermissibly "reweigh the evidence presented to the ALJ."  *Reece*, 834 F.3d at 908 (quoting *Johnson*, 788 F.3d at 872).

O'Brien also says that the "ALJ failed to explain the significance of her recurrent notations that imaging or neurological testing was normal" and "the relevance of her finding, that O'Brien, reported 20 days a month without migraines at the May 2023 examination."  *Id.* at 14 (cleaned up).  The Court disagrees that the ALJ failed to explain the relevance of these findings.  After detailing her analysis of O'Brien's impairments—including the evidence above—the ALJ found that "[w]hile [O'Brien's] subjective complaints paint a bleak picture, the objective findings do not support the severity of her complaints."  Tr. 26.  Additionally, the ALJ found "nothing persuasive in the record to suggest that the claimant is incapable of performing a restricted range of light-duty work activity, with the additional limitations detailed in the [RFC] finding."  *Id.*

## VI.    Conclusion

For the reasons explained above, the Court affirms the Commissioner's decision and dismisses with prejudice O'Brien's [1] Complaint.  A Judgment accompanies this Memorandum and Order.

So ordered this 2nd day of March 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

13